NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
PATRICIA J. BACCOLI,                     :
                                         :
    Plaintiff,                           :    Civ. No. 05-5614 (GEB)
                                         :
    v.                                   :    **MEMORANDUM OPINION**
                                         :
JO ANNE B. BARNHART,                     :
Commissioner of Social Security,         :
                                         :
    Defendant.                           :
_____:

**BROWN, Chief Judge**

    This matter comes before the Court upon the appeal of plaintiff Patricia J. Baccoli ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act"). The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I. BACKGROUND**

    On September 2, 1998, Plaintiff filed the current application[1] for a Period of Disability and Disability Insurance Benefits, alleging disability beginning on August 31, 1993. Record ("R.") at 169-72. Plaintiff based her application for disability benefits on allegedly being unable to work due to lower back and neck pain as well as a mental impairment. The Social Security Administration

---

[1] Plaintiff previously filed an application for a Period of Disability and Disability Insurance Benefits on January 16, 1996, alleging disability beginning on August 31, 1993. The claim was denied upon initial determination on February 16, 1996. R. at 14.

denied Plaintiff's claim initially and on reconsideration. R. at 125-28; 97; 130-32. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review her application de novo. R. at 133-34. The hearing was held on March 24, 2000 before ALJ Ralph J. Muehlig. R. at 75-95. On June 30, 2000, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. R. at 98-108. Plaintiff requested review of the hearing decision, which was denied by the Appeals Council on July 12, 2002. R. at 152-54; 117-18A. Plaintiff then filed a civil action seeking review of the decision. By way of a consent order entered on November 27, 2002, the case was remanded for further administrative proceedings. ALJ Daniel W. Shoemaker, Jr. conducted a supplemental hearing on May 12, 2004. R. at 34-74. The ALJ determined that Plaintiff was not disabled in a decision issued on October 29, 2004. R. at 11-32. On October 7, 2005, the Appeals Council denied Plaintiff's request for review. R. at 6-8.

     At the supplemental hearing in 2004, Plaintiff testified that she was a forty-seven year old woman with approximately two years of college education. R. at 15. Plaintiff testified that she lives with her husband and her daughter, who was nine years old at the time of the hearing. R. at 41. Plaintiff testified that she has a driver's license but limits driving because of pain in her neck and lower back. Id. Plaintiff explained that she accompanies her husband to the grocery store and he picks up the items. R. at 42. Plaintiff testified that she was unable to care for her daughter when she was younger, for example, by bending down to her level, sitting on the floor to play, carrying and feeding her. R. at 62. Plaintiff also testified that she can only perform light housework and light cooking. R. at 66. Plaintiff testified that she has trouble sleeping due to the pain in her neck and back. R. at 63. Plaintiff also explained how she felt approximately five years prior to the hearing, in 1999. For instance, Plaintiff testified that she was only able to sit or stand for about a half hour

at a time. R. at 64. Plaintiff testified that she was unable to lift her then four-year-old daughter, could not bend down to pick things up or lift anything above her head. Id. Plaintiff testified that she continues to have these limitations. Id. Plaintiff testified that she was able to walk about four or five blocks in 1999. R. at 65.

In addition to neck and back pain, Plaintiff claims to have a tendency to forget things and has trouble concentrating. R. at 60. Plaintiff testified that prior to the accident, she paid the household bills, however, her husband now takes care of this task because Plaintiff could not maintain the finances. R. at 61. Further, Plaintiff testified that in 1998 she sought treatment from a psychiatrist for depression. R. at 51. Plaintiff testified that she felt incomplete and was not fulfilling her duty as a wife or mother. Id. Plaintiff further testified that her husband lost his job and that she continued to experience neck and back pain. Id.

Regarding her past work experience, Plaintiff testified that she previously worked as a recreational therapist and a package car driver. R. at 15. Plaintiff testified that in 1985 she was a full-time recreational therapist at Marlborough Psychiatric Hospital. R. at 46. Plaintiff testified that as a recreational therapist she was required to lift or carry more than twenty pounds on a regular basis and participate in sports with the clients. Id. Plaintiff next took a job as a UPS package car driver, where she drove a truck and handled packages up to seventy pounds until her injury in 1993. Id. Plaintiff testified that in 1994 and 1995 she worked part-time (approximately 20 hours per week) at the YMCA in the child after-care program. R. at 43. Plaintiff explained that she stopped working at the YMCA because she had just given birth to her daughter and could no longer handle the job due to its active nature. Id.

Plaintiff was thirty-six years old at the time she was injured on August 31, 1999. R. at 15;

18.  Plaintiff testified that while working for UPS she was delivering a package to a resident and twisted her ankle and fell to the ground, hitting her head.  R. at 43.[2]  Plaintiff testified that because she was injured while at work, she filed a Worker's Compensation claim, from which she receives $280 per week.  R. at 44.  According to Worker's Compensation, Plaintiff is on partial permanent disability.  Id.  Plaintiff also testified that since August 1993 she has not filed for unemployment, welfare or food stamps.  R. at 45.

At the hearing in 2004, Plaintiff testified that in 1998, the pain in her back and neck was excruciating and there were times that the pain would shoot down her right arm and leg.  R. at 52.  Plaintiff testified that the pain in her neck was a very sharp, constant pain and it was difficult for her to turn her head.  R. at 53.  On a scale of 1 - 10, Plaintiff stated that her pain in 1998 was about an 8 or 9.  R. at 54.  Plaintiff testified that moving her head and the weather increased her pain.  Id.  In 1998, Plaintiff was not taking any prescription medication, but took over-the-counter medication such as Tylenol or Advil.  R. at 55.  Regarding the pain in her lower back, Plaintiff testified that the pain was of the same degree at the time of the hearing in 2004 as it was in 1998.  R. at 55.  Plaintiff described the pain in her back as shooting pain down her right leg and pins and needles going down to her toes.  Id. On a scale of 1 -10, Plaintiff testified that her pain in 1998 was about an 8 or 9.  R. at 56.  In 1998 and in 2000, Plaintiff testified that she saw a psychologist due to depression.  R. at 59.  Plaintiff testified that she was always crying, and could not live with herself because of the pain

---

[2]  Plaintiff was previously injured while working on July 29, 1992, where she sustained neck and back injuries that required two weeks of chiropractic care, physical therapy and medication.  R. at 18 - 19. On July 29, 1992, Plaintiff suffered a low back injury while working, and also complained of neck, bilateral shoulder and arm pain. R. at 18. The treating physician found that Plaintiff had a mild partial disability, but was able to work full-time with restriction to no lifting over seventy-five pounds. R. at 19.

4

and not being able to be the person she wanted to be. R. at 60. Plaintiff also testified that she has problems with her memory and her ability to concentrate. Id.

Plaintiff's husband, Michael Baccoli, testified at the hearing. R. at 67. Mr. Baccoli testified that his wife's injuries limited her ability to perform household duties such as ironing and food shopping. R. at 69. Mr. Baccoli stated that he and the Plaintiff did not have another child due to Plaintiff's condition. Id. He also testified that Plaintiff suffered side effects from the medication she takes for her injuries, which causes personality changes and mood swings. Id. Mr. Baccoli testified that his wife suffers from fatigue, lack of attention span and cannot handle stress. R. at 72-73.

The ALJ issued a decision on October 29, 2004, determining that Plaintiff is not disabled within the meaning of the Social Security Act during the period beginning on August 31, 1993 and continuing through September 30, 1999. R. at 15. The ALJ summarized all of the evidence in the record in the opinion, which included the following medical examinations of Plaintiff. R. at 18-26.

On August 31, 1993, Plaintiff sustained head, neck, back and ankle injuries when she tripped in a pothole while working. Id. Plaintiff did not visit a doctor immediately, but subsequently developed pain in the right trapezius muscle and numbness and tingling in the fingers. Id. The company doctor instructed Plaintiff to take aspirin and rest. Id. On October 23, 1993 Dr. Osvaldo A. Elroy, an orthopedic surgeon, evaluated Plaintiff, finding that she had sustained a sprain of the lateral malleoi and concussion of the skull. Id. Dr. Elroy could not find an orthopedic disability but recommended a neurological consultation because of Plaintiff's complaints of headaches. Id. On December 8, 1993, Dr. Richard Rada, a chiropractor, examined Plaintiff, finding cervical, dorsal and lumbar sprain with myositis and radiculitis. Id. Dr. Rada recommended weekly chiropractic visits for six weeks, stated that Plaintiff had a moderate, temporary disability and restricted Plaintiff to no

prolonged sitting, standing or lifting.  Id.

On March 7, 1994, Dr. Matthew Garfinkel, an orthopedist, evaluated Plaintiff.  Id.  Dr. Garfinkel found some diminished sensation to pin prick along the posterolateral border of the right arm, forearm and fourth and fifth digit and mild to moderate spasm in the right trapezius muscle.  Id.  On a follow-up visit on March 29, 1994, Plaintiff reported improvement in her neck pain but still had lower back pain with radiation down the right lower extremity.  Id.  Dr. Garfinkel found cervical strain improving and lumbosacral possible herniated disc.  Id.  He recommended physical therapy and stated that Plaintiff might be able to return to work on April 20, 1994.  R. at 20.  On March 24, 1994, Dr. Phillip Newman, an orthopedist, examined Plaintiff, finding that claimant was not disabled and could work full-time at her current job without limitation or restriction.  Id.  No orthopedic treatment, physical therapy or diagnostic testing was needed.  Id.  On May 24, 1994, Dr. Garfinkel examined Plaintiff again, finding that the left ankle appeared to have a strain, which he bandaged and recommended elevating.  Id.  Plaintiff was pregnant at the time and Plaintiff indicated to Dr. Garfinkel that she would continue mild exercising as instructed by her obstetrician.  Id.  Dr. Garfinkel recommended no specific therapy to the lumbar spine area.  Id.

On August 23, 1994, Dr. Stephen D. Zoretsky, an orthopedic and arthroscopic surgeon, evaluated Plaintiff, opining that she still had a mild partial disability related to her injuries, but due to her pregnancy, no further treatment was necessary.  R. at 21.  On March 14, 1995, Dr. Zoretsky noted that an MRI of the lumbar spine, performed on February 11, 1995, indicated an asymetic disc bulge which was causing no foraminal narrowing of the right at L5-S1, along with alteration of the disc space at L1-2 and associated hypertrophic changes of vertebral bodies.  Id.  Dr. Zoretsky found that Plaintiff had a mild, partial disability due to marked degenerative disc disease.  Id.  Dr. Barbara

6

Colon completed a worker's compensation report of her medical examination of Plaintiff on May 1, 1995. Id. The worker's compensation report indicated that Plaintiff had a permanent partial disability. Id.

On April 26, 1996, Dr. Steven J. Heller, an orthopedic surgeon, evaluated Plaintiff who reported right-sided lower back pain, frequent headaches and occasional neck pain. R. at 21. During the physical examination Plaintiff was described as being in no apparent distress and sat throughout the interview without any noted discomfort. Id. Dr. Heller noted that Plaintiff exhibited exaggerated, non-organic pain response on superficial stroking of the skin overlying the right trapezius and lower lumbar region, stating that this gave her pain. R. at 22. Dr. Heller also noted that there was no pelvic or sciatic notch tenderness other than with superficial stroking over the trochanteric regions of both hips which resulted in Plaintiff voicing pain. Id. However, Dr. Heller stated that this was an inconsistent finding as, at other times during distraction maneuvers, light as well as deeper palpation over these areas failed to result in her voicing any pain. Id. Based on his examination, Dr. Heller found no objective evidence to indicate permanent orthopedic impairment to the spine or ankle, and that Plaintiff had a mild, partial disability but could return to light duty work with restrictions of no heavy lifting. Id.

On November 26, 1998, Dr. Alfred Hess performed a consultative orthopedic examination. R. at 23. Plaintiff stated that she last received treatment/physical therapy for her back in 1996, last received chiropractic treatment in 1994 and had not consulted any physicians for her back pain since 1996. Id. Dr. Hess found that claimant had satisfactory ability to perform fine and gross manipulation, her grip was normal, there was no muscle weakness, range of motion was essentially normal throughout and there were no remarkable motor, sensory, reflex or neurological deficits. Id.

On April 29, 1999 Dr. Ronald Bagner performed a consultative physical examination and his impression was lumbar radiculopathy. Id.

A physical residual capacity assessment was completed by a State Agency review physician on May 21, 1999. R. at 24. The exam indicated that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk for about six hours and sit for about six hours during an eight hour workday. Id. Plaintiff did have postural limitations restricting her to occasional stooping, crouching, crawling and climbing of ramps/stairs and that precluded her from climbing ladders/ropes/scaffolds. Id.

In September 1998, Plaintiff received treatment at Preferred Behavioral Health from Dr. Ann M. Reese for depression, anxiety and stress. Id. Further examinations with Preferred Behavioral Health revealed major depressive disorder. Id. On May 8, 1999, Dr. Thomas Plahovinsak performed a mental status examination, finding that Plaintiff had an adjustment disorder with depressed mood-chronic. R. at 24. The report noted that Plaintiff's memory was within normal limits, attention and concentration were satisfactory and Plaintiff could follow directions at a difficult level. Id. A psychiatric review technique form was completed by a State Agency psychiatric reviewer on May 25, 1999, and indicated that Plaintiff had an adjustment disorder with mixed emotional features which was not a severe impairment. Id. The report also indicated that Plaintiff had only slight restriction of activities of daily living; slight difficulties in maintaining social functioning; seldom had deficiencies of concentration, persistence or pace; and never had episodes of deterioration or decompensation in work or work-like settings. Id.

While Plaintiff continued to consult physicians regarding her injuries and depression from 2000 until 2004 (as reflected in the record), Plaintiff was last insured for Title II benefits on

September 30, 1999. R. at 24.

Based on these examinations, the ALJ found that while the Plaintiff had some subjective symptoms during the period beginning August 31, 1993 and continuing through September 30, 1999, they were not "of the intensity, frequency or duration alleged." R. at 27. The ALJ found discrepancies throughout the record, which raised doubt as to Plaintiff's credibility, including, for example, Dr. Eloy's 1993 examination finding no orthopedic disability, Dr. Rada's (Plaintiff's treating chiropractor) 1994 examination finding only a moderate temporary disability, and Dr. Newman and Dr. Garfinkel's assessments in 1994 which stated that Plaintiff could return to work. Id. The ALJ found that Plaintiff had the residual functional capacity to perform at least a wide range of light exertional level work, with some limitations. R. at 29. The ALJ gave substantial weight to the report of Plaintiff's treating/examining doctors and the non-examining State Agency medical reviewer. Id.

After reviewing the entire record, the ALJ made the following findings: 1) Plaintiff met the non-disability requirements for a Period of Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act, and was insured for benefits only through September 30, 1999; 2) Plaintiff did not engage in substantial gainful activity during the period beginning on August 31, 1993 and continuing through September 30, 1999; 3) Plaintiff's adjustment disorder with depressed mood was not a severe impairment during the period beginning on August 31, 1993 and continuing through September 30, 1999; 4) Plaintiff's chronic low back pain syndrome and chronic neck pain syndrome are considered "severe" based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)); 5) these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4; 6) Plaintiff's allegations

regarding her limitations during the time period at issue are not totally credible for the reasons set forth in the body of the decision; 7) during the period beginning August 31, 1993 and continuing through September 30, 1999, Plaintiff had the residual functional capacity to perform a wide range of light exertional level work; i.e., she could lift and carry twenty pounds occasionally and ten pounds frequently, and could stand and/or walk for six hours and sit for six hours during an eight hour workday; however, Plaintiff had postural limitations that restricted her to only occasional stooping, crouching, crawling and climbing of ramps/stairs, and which precluded her from climbing ladders/ropes/scaffolds; 8) Plaintiff has been unable to perform any of her past relevant work (20 C.F.R. § 404.1565); 9) Plaintiff was thirty-six years old on August 31, 1993 (i.e., a "younger individual between the ages of eighteen and forty-four" (20 C.F.R. § 404.1563)); 10) Plaintiff has two years of college education (20 C.F.R. § 404.1564); 11) Plaintiff has a semi-skilled work background; however, her skills were not transferable to other work within her residual functional capacity during the time period at issue (20 C.F.R. § 404.1568); 12) during the period beginning on August 31, 1993 and continuing through September 30, 1999, Plaintiff had the residual functional capacity to perform substantially all of the full range of light work (20 C.F.R. § 404.1567); 13) based on exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled"; 14) Plaintiff's capacity for light work is substantially intact and has not been compromised by any non-exertional limitations; accordingly, using the above cited rule(s) as framework for decision-making, Plaintiff is not disabled; and 15) Plaintiff was not under a "disability," as defined in the Social Security Act, during the period beginning on August 31, 1993 and continuing through September 30, 1999 (20 C.F.R. § 404.1520(f)).

## II. DISCUSSION

### A. Standard Of Review For Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(internal citation omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B. Standard For Awarding Benefits

A plaintiff may not receive benefits under the Act unless he or she first meets statutory

insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520.  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  Id.  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a "severe impairment" is not disabled. Id.  Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ

proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. Id. If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

   The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. Id. If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits. Id. If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work." Id. Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five,

that the "claimant is able to perform work available in the national economy." Id. The step five analysis "can be quite fact specific." Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

### C. The ALJ's Decision Was Based Upon Substantial Evidence In The Record

Plaintiff seeks review of the ALJ's unfavorable determination which denied her claim for social security disability insurance benefits. Pl.'s Br. at 1. Plaintiff claims that the ALJ's decision was not based on substantial evidence as required by 42 U.S.C. § 405(g). Id. More specifically, Plaintiff contends that the ALJ erred in finding that her mental impairments were not severe; in failing to consult with a medical expert regarding Plaintiff's residual functional capacity; in determining that Plaintiff could perform the full range of light work; in failing to consider the effect of Plaintiff's mental impairment on her residual functional capacity; and in failing to consider the Plaintiff's non-exertional impairments of depression and its effect on her ability to perform light work. Pl.'s Br. at 2.

Plaintiff challenges the ALJ's finding that her mental impairment was not severe, stating that the standard for Step 2 of the ALJ's analysis is a de minimis screening and Plaintiff's mental impairment should have surpassed this step. Pl.'s Br. at 6-8 (citing Smolen v. Chater, 80 F.3d. 1273, 1290 (9th Cir. 1996)). As noted by Defendant, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Examples of mental abilities include understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The ALJ's decision relies upon the opinion of the State Agency psychological consultant, who found that Plaintiff did not have a severe mental impairment. R. at 319. Further,

the consultant found that Plaintiff has only a slight restriction of daily activities. R. at 24. In addition, the ALJ relied upon Dr. Plahovinsak's report which found Plaintiff to be oriented, her thought processes clear, coherent and relevant, and her memory and concentration within normal limits. R. at 23-24. Dr. Plahovinsak diagnosed Plaintiff with an adjustment disorder with depressed mood, but did not indicate that this impairment affected Plaintiff's ability to perform work activities. R. at 24. The Court therefore finds that the ALJ's decision that Plaintiff's mental impairment was not severe was based on substantial evidence in the record.

Plaintiff also asserts that Social Security Ruling 83-20 ("SSR") should have been followed to establish an onset date of Plaintiff's disability. Plaintiff contends that the onset date of her disability is critical since she was no longer entitled to disability benefits after September 30, 1999.[3] Pl.'s Br. at 8. Plaintiff claims that the ALJ erred in failing to consult a medical expert regarding the Plaintiff's residual functional capacity. Plaintiff cites to SSR 83-20, which states "[w]ith slowly progressive impairments it is sometimes impossible to obtain medical evidence establishing the precise date and impairment became disabling." Defendant, however, disagrees that this is a case in which an onset date is critical, as the ALJ did not find that Plaintiff was disabled at some point after her insured status expired. Pl.'s Br. at 22. The ALJ did not find Plaintiff disabled at any time, thus there is no need for a clarification of an onset date. Further, Defendant maintains that the record is devoid of evidence to show Plaintiff was disabled after September 30, 1999.

---

[3] The Court recognizes that Plaintiff continued to receive medical care after 1999. However, the ALJ considered this evidence as set forth in the record and determined that Plaintiff was not disabled after her benefits expired in 1999. More specifically, the ALJ noted that in February 2002, Dr. Joel Goldstein opined that there was no contraindication to Plaintiff working in some form of sedentary or light duty capacity. R. at 375.

According to the Regulations, if there is information in the file indicating that additional medical evidence concerning the onset date is available, such evidence should be considered before any inferences are made. SSR 83-20. In this case, the ALJ considered medical records dating back to the Plaintiff's injury in 1993 and testimony from the Plaintiff relating to her condition prior to the 1999 expiration of disability benefits. R. at 18-26; 34-74. The existence of this information precludes the need for an inference as to the onset date. According to the Regulations, in cases where an inference as to the onset date is required, an informed judgment of the facts must be considered and the judgment must be based on a legitimate medical basis. SSR 83-20.

Plaintiff cites <u>Newell v. Commissioner of Social Security</u>, 347 F.3d. 541 (3d Cir. 2003) in support of her argument that a medical advisor should have been consulted in this case to determine the onset date. Pl.'s Br. at 8-10. However, in <u>Newell</u>, the ALJ was not presented with any medical evidence to support a finding of a disability and was required to infer an onset date. With the lack of evidentiary support, the Court found that the ALJ should have consulted a medical advisor when rendering its decision. <u>Newell</u>, 347 F.3d at 548-549. In the case at hand, the ALJ considered a significant record of medical evidence including testimony by the Plaintiff, several consultative examinations of the Plaintiff and the review of Plaintiff's records by State Agency physicians. R. at 34-74; 109-123; 236-399. SSR 83-20 indicates that medical evidence is the primary source of information when determining onset dates. Therefore, the Court finds that the ALJ was not required to call upon a medical advisor given the circumstances of this case and there was substantial evidence in the record supporting the ALJ's determination that Plaintiff was not disabled before or after September 30, 1999.

Plaintiff claims that the ALJ also erred in determining that she could perform a full range of

light work. Pl.'s Br. at 10. Plaintiff contends that the ALJ did not consider the limitations set forth by Plaintiff's treating doctors when rendering its decision that she retained the residual functional capacity for light work. Pl.'s Br. at 11. Defendant contends that no physician opined that Plaintiff was unable to perform the work-related activities needed to execute light work. Def.'s Br. at 23. The ALJ's decision regarding Plaintiff's residual functional capacity is supported by substantial evidence in the record, including consideration of physicians who determined Plaintiff to be disabled for purposes of Worker's Compensation. R. at 18-26; 21; 236-399. Because there is no partial disability under the Act, the opinions that Plaintiff was partially disabled for Worker's Compensation purposes did not necessitate a finding of disability under the Act. See Smart v. Sullivan, 1989 U.S. Dist. LEXIS 13333, *9 (D.N.J. 1989)(citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1989); see also Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985); DeJesus v. Chater, 899 F.Supp. 1171, 1177 (S.D.N.Y. 1995).

Further, regarding her residual functional capacity, Plaintiff claims that the ALJ failed to consider the effect of her mental impairment and failed to conduct a complete analysis of Plaintiff's capacity. Pl.'s Br. at 12. According to SSR 85-16, "with mental impairments of a lesser severity, such inability [to perform substantial gainful activity] must be demonstrated through a detailed assessment of the individual's capacity to perform and sustain mental activities which are critical to work performance." In addition, "[c]onclusions of ability to engage in [substantial gainful activity] are not to be inferred merely from the fact that the mental disorder is not of listing severity." The ALJ's decision, contrary to Plaintiff's assertion, took into consideration Plaintiff's mental capacity. The ALJ's decision did not solely rest upon the determination that the mental impairment was not severe, rather, it considered relevant evidence as set forth in SSR 85-16, for example, history

and psychological test results, reports of daily activity from Plaintiff and her husband, level of intellectual functioning and ability to function in a work-like setting. R. at 34-74; 109-123; 236-399. The ALJ's decision relied upon Dr. Plahovinsak, the consultative mental status examiner, and a State Agency psychiatric reviewer. R. at 24; 28. Dr. Plahovinsak conducted many normal mental status findings and opined that Plaintiff could follow directions at a difficult level. R. at 309-310. The State Agency reviewer found Plaintiff without any significant mental limitations, and found only slight restriction of activities of daily living, slight difficulties in maintaining social functioning, seldom deficiencies of concentration, persistence or pace and no episodes of deterioration or decompensation in work or work-like settings. R. at 24. Based on the evidence in the record, the ALJ's decision considered these factors when rendering its decision that Plaintiff's mental status did not impact her ability to perform light work.

Plaintiff also claims that the ALJ erred in failing to consider her non-exertional impairments of depression and its effect on her ability to perform the full range of light work. Pl.'s Br. at 14-16. According to SSR 83-33, mental activities are non-exertional. "Jobs at various levels of complexity require mental functions such as intellectual competence and ability to function in terms of behavior, affect, thought, memory, orientation and contact with reality." SSR 83-33. Further, "[e]xposure to particular work stresses may not be medically sustainable for some persons with mental impairments . . . Depending on the nature and extent of a person's mental impairment which does not meet or equal the criteria in the listing of Impairments, relatively broad or narrow types of work may be precluded." SSR 83-33. Further, the Regulations state that some conditions, for example, depression, may also affect a person's exertional capacity. In this case, the ALJ found no evidence of any limitations that Plaintiff's mental impairment would have on her ability to perform light work.

Based on the reports of the State Agency psychiatric review and Dr. Plahovinsak, as previously discussed, Plaintiff's mental impairment was considered not severe and did not impact her daily activities or her ability to work. Therefore, the ALJ's decision that the non-exertional mental impairment did not impact the range of light work able to be performed by Plaintiff is supported by substantial evidence and is upheld by this Court.

Accordingly, the Court finds that the ALJ's decision was based upon substantial evidence in the record and Plaintiff's appeal is denied.

### III.  CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: December 5, 2006

      s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.